**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge William J. Martínez**

Criminal Case No. 25-cr-327-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

**3. ALINA SERENA OCHOA-LUNA,**

Defendant.

---

**ORDER REJECTING GUILTY PLEA AND PLEA AGREEMENT**

---

This matter is before the Court on Defendant Alina Serena Ochoa-Luna's proposed plea of guilty to an Information, as well as the parties' proposed plea agreement regarding same. (ECF No. 98.) During the change of plea hearing on September 16, 2026, the Court announced that it would "take the question of whether to accept or reject the defendant's plea and the parties' plea agreement under advisement, and [that] a written order [would] follow in due course." (Tr. 26:14–17.)[1] This is that order. And, for the reasons explained below, the Court rejects the Plea and Plea Agreement.

## I. BACKGROUND

The Indictment, which was filed on November 19, 2025, charges Defendant with

[1] Quotations from the change of plea hearing are taken from the rough draft of the transcript ("Tr.") prepared by the Court Reporter, which is subject to revision before it is finalized.

distribution of fentanyl, a schedule II controlled substance, resulting in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count 2"); and conspiracy to do the same, in violation of 21 U.S.C. § 846 ("Count 1"). (ECF No. 1-3.)[2]

Defendant was arrested on December 2, 2025 (ECF No. 6), arraigned on December 8, 2025, and pleaded not guilty. (ECF No. 31.) She was released later that same day on bond. (ECF No. 32.)

On August 27, 2026, Defendant filed a Notice of Disposition and requested a change of plea hearing. (ECF No. 84.) The Court set a change of plea hearing for September 16, 2026. (ECF No. 85.) The Court received and reviewed the Plea Agreement ("the Agreement") (ECF No. 98), Plea Agreement Supplement ("the Supplement") (ECF No. 99), and Statement in Advance of Guilty Plea (ECF No. 100) ahead of that hearing. The major points of the Plea Agreement are:

- Defendant agrees to waive Indictment and plead guilty to an Information charging a violation of 21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute a Mixture or Substance Containing a Detectable Amount of Fentanyl, in violation of 21 U.S.C. § 84l(a)(1) and (b)(l)(C)). (ECF No. 98 at 1.) The most significant difference between this charge and the charges in the Indictment (Counts 1 & 2) is that the Indictment charges Defendant both with conspiracy and underlying distribution of fentanyl *resulting in death*, which triggers the guideline

[2] Counts 3 & 4 are directed solely at co-Defendant Felicia Ortiviz, while only Count 1 is directed at co-Defendant Joe Elijo Herrera.

range of 235 to 293 months a 20-year mandatory minimum sentence,[3] whereas she pleads violation of 21 U.S.C. § 846, conspiracy to distribute and possess with intent to distribute fentanyl (omitting the death-resulting) as the underlying substantive offense, which contains no mandatory minimum in the circumstances presented here. *See* U.S. SENT'G GUIDELINES MANUAL, Ch. 5 Pt. A (U.S. SENT'G COMM'N 2025), at https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2025/Sentencing_Table.pdf.

- In exchange for pleading guilty to the conspiracy charge in the Information, the Government agrees to move to dismiss Counts 1 and 2 of the Indictment with prejudice, against this Defendant only. (ECF No. 98 at 2.)
- Provided Defendant does not engage in prohibited conduct or otherwise implicate USSG §§3C 1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the Government agrees that the defendant should receive *a two-level reduction* for acceptance of responsibility pursuant to USSG § 3E1.1(a). (*Id.*) (emphasis added).

For reasons set forth in the Supplement, "the government [also] currently intends to recommend a *downward reduction of up to 30%* from the bottom of the applicable

[3] 21 U.S.C. § 841(b)(1)(C) ("[i]n case of a controlled substance in schedule II or II . . . such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life . . . .").

guideline range," pursuant to USSG § 5K1.1. (ECF No. 99 at 22.) (emphasis added).

The Agreement's preliminary sentencing calculation estimated an offense level of 10 (level 12 pursuant to § 2D1.1(a)(5)), less a 2-level decrease pursuant to § 3E1.1(a)). This, in conjunction with the Parties' agreed criminal history category of IV, yielded an advisory sentencing range of 15–21 months. (ECF No. 98 at 17–18.); USSG, Ch. 5, Pt. A. With the Supplement's recommended 30% reduction pursuant to USSG § 5K1.1, the final sentence would be approximately one year.

The Agreement also stated "[t]he parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose" a sentence below, within, or above the advisory guideline range (up to the statutory maximum). (ECF No. 98 at 18–19.)

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 11(c)(1)[4] permits the government and a defendant to enter into several types of plea agreements: (1) "charge bargains," under Rule 11(c)(1)(A), in which the government agrees not to bring or to dismiss other charges; (2) "sentence bargains," under Rule 11(c)(1)(B), in which the government agrees to recommend a sentence or sentencing range or not oppose a sentence or range recommended by the defendant; and (3) "sentence bargains" under Rule 11(c)(1)(C), in which the parties bind the court to an agreed-upon sentence or sentencing range. The Tenth Circuit recognizes that a plea agreement may also be a "hybrid bargain," which "contain[s] part charge and part sentence bargains." *United*

[4] Rule 11(c) was previously codified at Rule 11(e).

*States v. Robertson*, 45 F.3d 1423, 1437 (10th Cir. 1995); *United States v. Carrigan*, 778 F.2d 1454, 1462 (10th Cir. 1985); *United States v. Papke*, 149 F.4th 1169, 1181 (10th Cir. 2025).

"To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) [a charge bargain] or (C) [a binding sentence bargain], the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P. 11(c)(3)(A). And, "[t]o the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request." Fed. R. Crim. P. 11(c)(3)(B).

Notwithstanding the agreement reached between the defendant and the government, "[a] district court enjoys substantial discretion in deciding whether to accept or reject a plea agreement under Rule 11." *United States v. Rakes*, 510 F.3d 1280, 1286 (10th Cir. 2007); *Carrigan*, 778 F.2d at 1462 ("There is no absolute right to have a guilty plea accepted, and a court may reject a plea in the exercise of sound judicial discretion.").

The scope of that discretion depends on the nature of the agreement. *Robertson*, 149 F.4th at 1437. Sentencing bargains, for instance, implicate the Court's authority and discretion to impose an appropriate sentence. *United States v. Vanderwerff*, 788 F.3d 1266, 1271 (10th Cir. 2015) ("[c]ourts enjoy considerable discretion in their consideration of sentence bargains because the prosecution's role . . . is strictly advisory. . . .") (internal quotations omitted). Charge bargains, on the other

hand, “are primarily a matter of discretion for the prosecution and the court's sentencing discretion is implicated only as an incidental consequence of the prosecution's exercise of executive discretion.” *Id*. at 1271 (internal quotations omitted). As such, they permit more limited judicial scrutiny.

A hybrid plea agreement combines the two, implicating both prosecutorial and judicial discretion. *Robertson*, 45 F.3d at 1437; *Papke*, 149 F.4th at 1181. Although the Court must accord appropriate deference to the Government’s charging decisions, the presence of a charge-bargaining component does not deprive the Court of its authority to reject the agreement based on its sentencing component. *Papke*, 149 F.4th at 1183–84 (“[W]e have held that a district court retains discretion to reject a hybrid bargain merely to preserve its discretion to sentence within the applicable range. . . [as well as] because [the district court] believes the stipulated sentence is insufficient.”) (internal citations omitted). In *Papke*, the Tenth Circuit held that the district court acted within its discretion in rejecting a hybrid agreement because the “stipulated sentence was insufficient given the seriousness of the offense. . . .” 149 F.4th at 1184; *see also* *Carrigan*, 778 F.2d at 1462 (“Rule 11 also contemplates the rejection of a negotiated plea when the district court believes that bargain is too lenient, or otherwise not in the public interest.”).

Whenever a district court rejects any plea bargain—be it a charge, sentence, or hybrid bargain—it “must set forth, on the record, the prosecution's reasons for framing the bargain and the court's justification for rejecting it.” *Robertson*, 45 F.3d at 1438.

This requirement helps ensure that "district courts exercise sound judicial discretion and adequately respect the principle of prosecutorial independence. . . ." *Id*.

## III. ANALYSIS

Because the scope of the Court's discretion depends on the nature of the plea agreement, the Court first addresses what type of plea agreement is at issue here. Second, having determined that the instant Agreement is a hybrid, the Court rejects the agreement as too lenient or otherwise not in the public interest. Third, the Court lays out Rule 11's required agreement procedure.

### A. The Agreement is a hybrid agreement

The Agreement is neither a pure charge bargain nor a pure sentence bargain, but a hybrid bargain. *Robertson*, 45 F.3d at 1437. It includes both an 11(c)(1)(A) charge bargain term (dismissal of Counts 1 and 2 of the indictment with prejudice against Ochoa-Luna) and (along with the Supplement) Rule 11(c)(1)(B) terms (both a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and a recommendation of downward reduction of up to 30% from the bottom of the applicable guideline range pursuant to USSG § 5K1.1). (ECF Nos. 98 & 99.)

In *Papke*, the Tenth Circuit held that the district court did not abuse its discretion by rejecting (properly construed) hybrid agreements.[5] Although *Papke* (and *Robertson*) concerned hybrid agreements comprised of 11(c)(1)(A) charge bargains and 11(c)(1)(C)

---

[5] In *Papke*, the Tenth Circuit addressed three separate plea agreements: the first was properly construed as a hybrid agreement and therefore properly rejected without an abuse of discretion; the second was erroneously characterized as a hybrid agreement when it was, in fact, a charge bargain, and was thus improperly rejected without due deference; and the third was a sentence bargain that the district court ultimately accepted. 149 F.4th at 1174.

binding-sentence bargains (rather than the part-11(c)(1)(A) and 11(c)(1)(B) bargain seen here), that appears to be of little consequence. The *Papke* court did not distinguish 11(c)(1)(A) sentence bargains from 11(c)(1)(B) sentence bargains in its discussion of a court's discretion, and this Court is not aware of any authority limiting its consideration of hybrid agreements to those only comprised of 11(c)(1)(A) and 11(c)(1)(C) terms. Although Rule 11 provides separate procedures for judicial consideration of 11(c)(1)(B) and 11(c)(1)(C) agreements, the Rule fully contemplates that this Court is not bound by a 11(c)(1)(B) sentence recommendation. *United States v. Macias-Gonzalez*, 219 F. App'x 814 (10th Cir. 2007) ("[T]he court has a wide range of discretion to either accept or reject sentence bargains, *as contemplated by Rule 11(c)(1)(B)* and (C).") (emphasis added).

Unlike the second plea agreement in *Papke*, in which the defendant agreed to plead guilty to two counts in exchange for dismissal of the third with "no conditions or agreements regarding the sentence the district court could impose," this Agreement is not silent with regards to a recommended sentence. 149 F.4th at 1177. It provides that "the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a)." (ECF No. 98 at 2.) Moreover, its Supplement provides that "the government currently intends to recommend a downward reduction of up to 30% from the bottom of the applicable guideline range," pursuant to USSG § 5K1.1. (ECF No. 99 at 22.) The Court's sentencing discretion here is thus not merely implicated as an incidental consequence of the agreement to dismiss Counts 1 and 2 (as was the court's discretion in *Papke*);

rather, it is implicated directly by the Parties' "recommend[ation] . . . that a particular . . . sentencing factor does or does not apply . . . ." Fed. R. Crim. P. 11(c)(1)(B). It is for these reasons that the Agreement—a hybrid—directly implicates both prosecutorial and judicial discretion.

**B. The Agreement offends the public interest**

Exercising its discretion under Rule 11 and guided by its independent duty to impose a sentence consistent with 18 U.S.C. § 3553(a), the Court rejects the hybrid agreement as too lenient and contrary to the public interest. *See Papke*, 149 F.4th at 1184; *Carrigan*, 778 F.2d at 1461–62. Consistent with *Robertson*, the Court places on the record (1) the Government's reasons for framing the rejected bargain as it did and (2) the Court's reasons for rejecting it, to ensure appropriate deference to charging discretion. *Roberston*, 45 F.3d at 1438.

1. <u>The Government's Argument for the Agreement</u>

The Government represents that it entered into the Agreement for the following reasons. First, in return for Defendant's agreement to waive Indictment and plead guilty to an information charging violation of 21 U.S.C. § 846, Defendant will waive certain appellate and collateral attack rights, forfeit all assets and property subject to forfeiture, and be liable for restitution to the mother of the victim, D.P., in an amount no less than $9,825.55. (ECF No. 98 at 1–2, 4.) Beyond that, the Supplement acknowledges that the Agreement is predicated on Defendant's "agree[ment] to provide truthful, complete, and accurate information relating to any matter about which the defendant may possess knowledge, information, or materials being investigated by the government[.]" (ECF No. 99 at 1.)

Additionally, the Government conceded that dismissal of Counts 1 and 2, which charged offenses resulting in death, in exchange for Defendant's guilty plea to the less serious conspiracy charge in the Information was based on the latter's less demanding burden of proof. Even so, the Government took the position that there was sufficient proof that the fentanyl pills that the Defendant distributed to Ortiviz were the same set of pills that Ortiviz distributed to D.P. later that night. (ECF Nos. 98 at 16–17.) And during the September 16 change-of-plea hearing, it reiterated:

> [T]his plea resolution is not dropping [death-resulting] issue, because the difference between the standards of proof as the Court is well aware, would be beyond a reasonable doubt at a trial, and by a preponderance of the evidence at a sentencing hearing. The Government is confident that it can prove the death resulting by a preponderance. And if the Court rejects this plea, we will proceed to trial, and seek to prove the death resulting beyond a reasonable doubt. But given all of the factors present in this case, we believe that this is a just resolution to put this in front of the Court with Ms. Ochoa-Luna's admissions to the other elements of the conspiracy to distribute fentanyl.

(ECF No. 96 at 9–10.) The Court recognizes this explanation as an additional justification for the Government framing the Agreement as it did.

2. <u>Why the Plea Agreement Is Rejected</u>

Having given due consideration to the Parties' proffered justifications and the overall effect of the Agreement, the Court rejects the Agreement as too lenient and against public policy. The Indictment charges the Defendant both with conspiracy and underlying distribution of fentanyl *resulting in death*, which (given the Parties' agreement that the Defendant is in criminal history category IV) triggers the guideline range of 235 to 293 months. (ECF No. 1-3); USSG, Ch. 5 Pt. A. Instead, the Agreement would have

Defendant plead guilty to the 21 U.S.C. § 846 conspiracy charge in the Information. (ECF No. 98). This, taken in conjunction with the proffered two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a), would yield an advisory sentencing range of 15–21 months. (*Id.*); USSG, Ch. 5 Pt. A. With the additional recommendation of downward reduction of up to 30% from the bottom of the applicable guideline range, pursuant to USSG § 5K1.1, Defendant would face approximately a year for distributing fentanyl that, according to the Government, resulted in the death of D.P. (ECF No. 99.)

The Court maintains that it is not in the interest of justice to accept such a precipitous reduction in the guideline range in a case in which the distribution of a dangerous controlled substance, such as fentanyl, resulted in the loss of the life of an innocent human being. There has been a surge in the use of fentanyl and other powerful synthetic opioids, both in Colorado and country-wide. According to the Centers for Disease Control and Prevention ("CDC"), there were over 73,000 drug overdose deaths involving synthetic opioids (excluding methadone), which included fentanyl, in the United States in 2022. U.S. Dep't of Justice & Drug Enf't Admin. Diversion Control Div., Fentanyl (2016), http://www.deadiversion.usdoj.gov/drug_chem_info/fentanyl.pdf. The CDC's provisional estimates for drug overdose deaths indicate that the number of deaths involving synthetic opioids (excluding methadone) in the 12 month-ending December 2024 was over 75,000 in 2023 and 49,000 in 2024. *Id*.

The fentanyl epidemic is one of our country's great tragedies, and it is thus not in

the public interest for this Court to accept an excessively lenient sentence that fails to acknowledge the sensitivities of this crime. The Agreement's recommended sentence fails on its face to satisfy the 18 U.S.C. § 3553(a) factors, particularly the need for the sentence to reflect the seriousness of the offense, in addition to providing adequate specific and general deterrence. *See Papke*, 149 F.4th at 1184; *Carrigan*, 778 F.2d at 1461–62. The Agreement, in its present form, is therefore not in the public interest, and the Court rejects it.

**C. The effect of Rule 11(c)(5)**

Rule 11(c)(5) states,

> If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
>
> (A) inform the parties that the court rejects the plea agreement;
>
> (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
>
> (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Although the Court is not rejecting the Agreement *solely because of* its 11(c)(1)(A) provision, the Court is rejecting an Agreement "containing" a 11(c)(1)(A) provision, and so the Court's decision falls within the scope of the rule. Accordingly, the Court is prepared, if necessary, to convene the required hearing, but is also prepared to accept Defendant's waiver of that hearing if she believes that this Order, and her attorney's

counsel regarding it, are sufficient to meaningfully inform and advise her as to the bases for the Court's decision today.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's proposed Guilty Plea and the parties' Plea Agreement (ECF No. 98) are REJECTED;
2. No later than **October 19, 2026**, Defendant shall file a notice stating whether or not she waives the hearing provided for in Rule 11(c)(5); and
3. The Court will re-set the dates and times for Ochoa-Luna's Final Trial Preparation Conference and Jury Trial in due course and by way of separate Order.

Dated this 8th day of October, 2026.

BY THE COURT:

William J. Martínez
Senior United States District Judge